[Cite as *In re Change of Name of J.K.J.M. to K.J.A.W.*, 2026-Ohio-2727.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

IN THE MATTER OF:

THE CHANGE OF NAME OF J.K.J.M. TO K.J.A.W.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 CO 0044**

---

Civil Appeal from the
Court of Common Pleas, Probate Division, of Columbiana County, Ohio
Case No. 2025 NC 00034

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed.

---

*Atty. Timothy A. Barry,* Fitch, Kendall, Cecil, Robinson & Barry Co., LPA, for Appellant

No Brief filed on behalf of Appellee

Dated: July 10, 2026

---

**WAITE, P.J.**

{¶1} Appellant Lindsay Amber West, mother of J.K.J.M., appeals the denial of her application seeking a name change for her child. Father did not appear or oppose the name change at trial and has not filed a brief on appeal. Appellant provided evidence that she is the sole caretaker of the child, that it is inconvenient for the child to have a last name that is different than hers, that Father has a reputation for violence, Father's family and family name is infamous in the Canton, Ohio area, and the name change would have no effect on the child's relationship with Father. Based on this record, the trial court abused its discretion in denying the name change application. Appellant's assignment of error has merit and the trial court's judgment is reversed.

<u>Facts and Procedural History</u>

{¶2} On August 6, 2025 Appellant filed an Application for Change of Name of Minor ("Application") in the Columbiana County Court of Common Pleas, Probate Division. In support of the Application she filed a statement of support, the birth certificate of her son J.K.J.M., an affidavit in support, a statement of the reason for the requested change, the dockets of two criminal cases filed against Father, photos of the damage Father caused to the couple's residence, and two pages of text messages between Appellant and Father. Appellant and Father are not, and have never been, married.

{¶3} A hearing on the Application occurred on October 1, 2025. Appellant testified in support of the Application. Appellee Father did not appear and filed nothing in opposition to the name change application. On October 2, 2025 the probate court denied the Application. This timely appeal followed. Appellee has not appeared or filed a brief in this appeal.

<u>Case No. 25 CO 0044</u>

**{¶4}** Appellant raises one assignment of error.

ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE APPLICATION OF LINDSAY AMBER WEST TO CHANGE THE NAME OF HER MINOR SON.

**{¶5}** Appellant requested to change the last name of her minor son from that of Father to her last name. Appellant mother and Appellee were never married, but Father's last name was given to the child. Father did not appear in the trial court to oppose the name change Application and has not appeared in this appeal. The Columbiana Court of Common Pleas, Probate Division, denied the Application. Appellant argues on appeal that the trial court's denial in this matter amounts to an abuse of discretion.

**{¶6}** An appellate court reviews a probate court decision to grant or deny an application for name change of a minor under an abuse of discretion standard. *Evangelista v. Horton*, 2011-Ohio-1472, ¶ 63 (7th Dist.). "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Craig v. Athey*, 2025-Ohio-336, ¶ 22 (7th Dist.), quoting *In re S.S.L.S.*, 2013-Ohio-3026, ¶ 22 (7th Dist.).

**{¶7}** Pursuant to App.R. 18(C), "if an appellee fails to file the appellee's brief within the time provided by this rule . . . the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." In applying this rule, the appellate court may reverse the

trial court judgment solely upon the consideration of the Appellant's brief if reversal is reasonable. *In re Change of Name of Dotson*, 2005-Ohio-367, ¶ 10 (4th Dist.). This is true even when the issue under review is whether the trial court abused its discretion in denying an application for a change of name. *Id.*

**{¶8}** An application for a change of name of a minor is governed by R.C. 2717.01 et seq. Most of the caselaw reviewing name change applications is based on a prior version of the statute, which was completely changed and amended effective August 17, 2021. Under the current law, the court may order the name change "upon proof that the facts set forth in the application show reasonable and proper cause for changing the name of the applicant " R.C. 2717.09. Caselaw has also determined that the name change must be in the best interests of the child. *In re Willhite*, 85 Ohio St.3d 28 (1999), paragraph one of the syllabus. "When the name change involves a minor child, the [trial] court must consider the best interests of the child in making its determination." *Evangelista* at ¶ 66.

**{¶9}** Appellant argues that there are eight factors for the trial court to consider when evaluating which last name a child shall bear when the parents have never been married: "[T]he effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child;

and any other factor relevant to the child's best interest." *Willhite* at 32. Although *Willhite* was based on a previous version of the relevant statute, the *Willhite* factors continue to be cited as the basis for making a best interests determination in change of name cases. *In re J.A.M.V.,* 2013-Ohio-2502, ¶ 11 (7th Dist.); *Matter of E.M.T.*, 2025-Ohio-4638, ¶ 24 (11th Dist.); *In re Name Change of C.L.F.*, 2022-Ohio-2300, ¶ 7 (10th Dist.). Appellant has addressed each of the eight factors to show that the trial court abused its discretion in denying the name change Application in this matter.

{¶10} First: she contends the effect on the preservation and development of the child's relationship with the parents will be positive for Appellant and have no effect on Father. Appellant is the sole caretaker of the child, the sole means of support, and the child sees Appellant every day. Appellee Father is only minimally involved in the child's life, does not wish to be more involved, and provides no assistance of any kind. Again, this record reflects that Appellee Father did not challenge the name change application in any way, failed to appear in the trial court, and does not challenge this appeal.

{¶11} Second: the child's identification with a family unit. Appellant argues that her family, including the child's maternal grandmother and great grandmother, comprise the only family unit the child knows. The name change will help solidify that identity.

{¶12} Third: the length of time the child has used the surname. The child was under three years old at the time of the Application. He has used Appellee Father's surname since birth. Thus, the child's use of the last name has not been for a long period and, as the child is very young, he will not have a strong association with that name.

{¶13} Fourth: the preference of the child. The child is too young to have a preference. This factor has no weight.

Case No. 25 CO 0044

**{¶14}** Fifth: whether the child's name is different from the name of the residential parent. The child's surname is different than that of Appellant. The name change will support the child's identity since Appellant is the caretaking parent and the child will have her name.

**{¶15}** Sixth: the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent. Appellant argued at trial that there is "embarrassment, discomfort, or inconvenience" in J.K.J.M. having Father's surname. Appellant also offered unrebutted evidence that the different last names present an inconvenience when conducting routine affairs where identity is at issue (such as healthcare visits) because she has been required to provide additional proof, such as a birth certificate, at each visit. She also contends that the child having Father's last name is both an embarrassment and a discomfort because Father has been charged with and convicted of multiple crimes, and because his family is known for criminal behavior in the Canton area, which is only a short drive from her home in Lisbon, Ohio.

**{¶16}** Seventh: parental failure to maintain contact and support. Father has only minimal contact with the child and has shown no interest in anything more than visitation "once a week sometimes." (10/1/25 Tr., p. 6.) Father has not sought court-ordered visitation.

**{¶17}** Eighth: any other relevant factor. Appellant states that she and Father have no physical or emotional relationship with each other, and Father has not indicated that he desires any additional relationship with the child. The Application for name change

Case No. 25 CO 0044

will help strengthen the family bond with the only family that the child has known, which is Appellant's family.

**{¶18}** It is clear that the trial court based its decision on considerations outside the law and the evidence in this case. At the name change hearing the trial judge said he was troubled that Appellee had only been served by publication and not by regular service. That observation is incorrect. Service was made by certified mail, which was unclaimed, and then he was appropriately served by regular mail as is provided by the Rules of Civil Procedure. The record does not reflect that the regular mail service was returned. What was served by publication was the notice of the hearing, which is required by R.C. 2717.14 and by the probate court. Service of the notice of hearing by publication is permitted by R.C. 2717.14(C) and is prescribed by the court's own rules regarding the hearing notice. Appellant followed the law and the court's requirements, but the court inexplicably implied that she had not, and the court relied on this mistaken characterization as a reason not to grant the Application.

**{¶19}** Documents pertinent to this appeal have been mailed to Appellee Father at his Canton address, including the notice of appeal, praecipe, docketing statement, notice of the filing of the trial court record, as well as all the appellate court orders and notices. We have no record that any of them have been returned as undeliverable. Again, we must note that Father made no appearance in the trial court proceedings, failed to challenge the Application in any way, and did not respond to this appeal.

**{¶20}** While the trial court claimed that Appellant alleged Father had a history of convictions for serious crimes, the trial court again misspoke. What Appellant alleged was that Father engaged in destructive and unsafe behavior, and that he had a record of

serious criminal charges. She provided evidence that Appellee Father had damaged her home in a rage. The court agreed with Appellant that Father had violently damaged her home in a fit of rage, but then concluded that Father (despite the fact that he did not appear at the hearing and failed to respond to the Application) had "shown great remorse" and apologized for his actions. The court was apparently relying on cryptic statements by Father contained in text messages that Appellant presented to prove that Father had damaged her home. As Father failed to make any kind of appearance in court, it was inappropriate for the trial judge to make a determination as to Appellee's remorse in this fashion.

{¶21} Appellant also provided evidence that Father had been indicted for aggravated possession of drugs, improper handling of firearms in a motor vehicle, OVI, and resisting arrest. She testified that "there had been some charges and allegations with you know drugs, possession, DUI all that stuff, criminal record." (10/1/25 Tr., p. 6.) This is the same allegation contained in her Application. The court distorted Appellant's claims in this regard, characterizing her testimony as "charges and allegations" of "convictions," without support. The trial court appeared to act as Father's advocate, discounting his convictions for disorderly conduct and dismissing Appellant's testimony that Father's family was infamous in the Canton area. The court, on its own and despite the unrebutted testimony of Appellant, determined that Canton was too far away from the child's residence for Father's family surname to make any difference to the child. Appellant's home is approximately 30 miles from Canton and Father works in the City of Canton.

Case No. 25 CO 0044

**{¶22}** The court was required to consider the best interests of the child, but the record reflects that, instead, in several instances the court appears to consider the best interests of Appellee Father, instead. When provided with unrebutted evidence of Father's criminal record, his violent nature, and that his family name had a notorious reputation in Canton, the court interpreted the evidence in a positive light for Father rather than in addressing the best interests of the child. The court concluded that two convictions for disorderly conduct were insignificant and that Father (who did not testify or make any kind of appearance) had sincerely apologized for the damage he caused to Appellant's home in a fit of rage. The court determined that Canton was far from Lisbon (where the child lived) and Father's notorious surname in Canton would have no bearing on the child's life in Lisbon. These conclusions are not supported by the unrebutted evidence in this record. Again, Father himself did not at any time contest this Application. Based on the evidence in this record, all supplied by Appellant in her Application, her testimony, and with extrinsic evidence, it is apparent that the child's best interests would be best served by granting the Application, as the record is replete with such evidence and is completely void of any evidence to the contrary. It appears, based on this record, that Father tacitly approves of this change, as he made absolutely no effort to challenge it.

**{¶23}** As there is no challenge to the Application or argument to the contrary by Appellee Father, the Appellant's brief and the record reasonably support reversal of the trial court judgment. Appellant has provided reasonable and appropriate support for her Application for name change and that it would serve the best interests of the child. Appellant's assignment of error is sustained and the decision of the trial court is reversed.

Case No. 25 CO 0044

Conclusion

**{¶24}** Appellant appeals the denial of her Application for a change of name for the child. Father did not oppose the name change at any point. Appellant Mother provided evidence that she is the sole caretaker of the child, the child's last name that is different from hers is an inconvenience, Father has a reputation for violence and criminal behavior, and his family name is infamous in the Canton, Ohio area. She testified that the name change would have no effect on the child's relationship with Father because he is only minimally involved with the child. Based on this record, the trial court abused its discretion in denying the name change Application and the judgment is reversed. The matter is remanded to the trial court to approve the Application and for any other necessary proceedings consistent with this Opinion.

Robb, J. concurs.

Dickey, J. dissents; see dissenting opinion.

Dickey, J., dissenting.

**{¶25}** Because I find the probate court did not act unreasonably in overruling the application for name change, I respectfully dissent. While the majority concedes we may not conduct a de novo review and supplant the probate court's decision with our own, it subsequently weighs certain evidence anew rather than determining that no sound reasoning process supports the probate court's decision.

**{¶26}** With respect to our standard of review, the majority cites the Fourth District's interpretation of App. R. 18(C) in *In re Change of Name of Dotson*, 2005-Ohio-367 (4th Dist.) for the proposition that we "may reverse the trial court judgment solely upon the consideration of the Appellant's brief if reversal is reasonable." Maj. Op. at ¶ 7, citing *Dotson* at ¶ 10. Significantly, the Fourth District reversed the judgment entry in *Dotson* based solely on a procedural issue, that is, the trial court's failure to conduct a full evidentiary hearing on the application. Moreover, *Dotson* reads in relevant part:

> At this juncture, we note that our review has been hampered in this matter due to the fact that the appellee has not entered an appearance in this appeal or filed an appellate brief. In *State v. Miller* (1996), 110 Ohio App.3d 159, 161, 673 N.E.2d 934, 936, we addressed the consequences of the failure to file an appellate brief and the application of App.R. 18(C) as follows:

> "Prior to considering the merits of this appeal, we note that appellee has failed to file a brief or otherwise make an appearance in this appeal.

Case No. 25 CO 0044

App.R. 18(C) provides that if an appellee fails to timely file its brief, the court, in ruling on the appeal, may accept the appellant's statement of the facts and issues as correct and reverse the trial court's judgment as long as appellant's brief reasonably appears to sustain such action. Under certain circumstances, an appellate court may need to consider all or part of a trial court's record in such a matter. *Bell v. Horton* (1995), 107 Ohio App.3d 824, 669 N.E.2d 546; *State v. Middleton* (1993), 85 Ohio App.3d 403, 409, 619 N.E.2d 1113, 1117; *Fuller v. Fuller* (1972), 32 Ohio App.2d 303, 304-305, 61 O.O.2d 400, 400-401, 290 N.E.2d 852, 853.

However, it is also within an appellate court's discretion to reverse a judgment based solely on a consideration of appellant's brief. *State v. Grimes* (1984), 17 Ohio App.3d 71, 71-2, 17 OBR 126, 126-127, 477 N.E.2d 1219, 1220-1221; *Ford Motor Credit Co. v. Potts* (1986), 28 Ohio App.3d 93, 95-96, 28 OBR 136, 138, 502 N.E.2d 255, 257-258; *Helmeci v. Ohio Bur. of Motor Vehicles* (1991), 75 Ohio App.3d 172, 174, 598 N.E.2d 1294, 1295-1296. Here, we accept appellant's statement of the facts and issues as correct."

*Dotson* at ¶ 10.

**{¶27}** App.R. 18(C) is permissive not mandatory, that is, it is within our discretion to limit our review of the facts and the issues. Here, Appellant gains no advantage as a result of Father's failure to file an appellate brief as the facts in this case are undisputed. While the application of App.R. 18(C) limits this appeal to whether the probate court

Case No. 25 CO 0044

committed an abuse of discretion, the rule does not constitute an appellate default judgment rule, and reversal remains conditioned on the merits of Appellant's argument. *State ex rel. Davidson v. Beathard*, 2021-Ohio-3125, ¶ 10 (interpreting S.Ct.Prac.R. 1.04 and App.R. 18(C)) ("Even if we were to accept Davidson's statement of facts and issues as correct, his brief does not provide a basis for reversal of the court of appeals' judgment.").

**{¶28}** A brief review of the evidence before the probate court informs my decision. In the application, Appellant alleges Father has minimal involvement with the child, but concedes Father sees the child once a week. Likewise, in her motion to waive publication of notice of name change, Appellant writes, "[Father] is minimally involved, visiting approximately once per week supervised by [Appellant's] parents at 4 hours in duration in which this time is rarely fully spent with the child."

**{¶29}** It is undisputed that Father provides no financial support for the child, and Father has previously engaged in destructive and unsafe behavior. Appellant alleged in the motion for waiver of publication, which was overruled by the probate court, that publication would pose "an unnecessary safety risk to both [Appellant] and the child, by drawing public attention to the child's current name and location."

**{¶30}** Appellant was the sole witness at the evidentiary hearing on the application conducted on October 1, 2025. Appellant has had sole custody of the child since his birth and provides all of his financial support. She provided the following testimony in support of the application:

> [Father] is very minimally involved. He sees [the child] once a week
> sometimes. Um, I often [sic], more time he does not take it, he does not

provide financially, he does not you know have any sort of responsibility with our son. Um, recently there have been some charges and allegations with you know drugs, possession, DUI all of that stuff, criminal record. Um, and there is just a (unintelligible) of you know criminal record on his side of the family. I feel like if my son were to continue with that last name he would be judged and ridiculed quite often um just because of that, you know his family is pretty well known as I don't want to say criminals in Canton[, Ohio] so I think having him have my last name not only will it create you know of a unity [sic] but also give him that fresh start. He is two so it is not like he is going to be confused . . .

(10/1/25 Hrg. Tr., pp. 6-7). Appellant added the child's last name was an inconvenience because she must bring his birth certificate to physicians' appointments to prove she is his mother. (*Id.* at p. 7).

{¶31} At the conclusion of Appellant's direct testimony, the probate court engaged in the colloquy with Appellant. Appellant conceded she had not filed proceedings to establish custody of the child nor sought a child support order against Father.

{¶32} When the probate court inquired about the criminal charges pending against Father, Appellant conceded the drug and alcohol charges had been resolved by a plea agreement and resulted in a conviction for disorderly conduct. When asked whether Father had any other criminal history, Appellant's counsel responded, "[h]e had one other uh domestic violence charge from about twelve years ago." However, Appellant conceded the domestic violence charge had also resulted in a conviction for disorderly conduct. (*Id.* at pp. 9-10).

{¶33} Appellant offered a series of photographs of damage to her residence caused by Appellant when she ended their relationship a few months after the child was born. In order to establish Father was responsible for the damage to the residence, Appellant offered text messages from Father, in which he begged for her forgiveness and expressed shame and regret for his actions.

{¶34} The probate court's colloquy with Appellant continued:

THE COURT:  You are alleging, you alleged today that [Father] is minimally involved but he sees the child every week.

APPELLANT:  Um hum (indicating yes)

THE COURT:  I see from the text messages that there was evidently an explosive breakup between you and [Father] um,  almost two years ago, a year and nine months ago when the child was an infant.

APPELLANT:  Um hum (indicating yes)

THE COURT:  Okay. And he was very apologetic about that and remorseful. He has not consented to the adoption [sic] of this child.  He is not in violation of a court order for failing to support (pause) ma'am I am going to be kind of brutely [sic] honest with you, through your filings and so forth it appears that you are aggressively trying to put [Father] out of you [sic] and the child's life.

. . .

Case No. 25 CO 0044

You know the allegations that you made of this great criminal conduct and so forth, he's got a couple misdemeanor disorderly conduct convictions. I don't know. Maybe he did other things that are worse than that the lead [sic] to those convictions but those are not substantial convictions that in and of themselves would give him a notorious name that would affect the child. You talk about his family has a bad name in and about Canton, well you live an hour, 45 minutes away in Lisbon with the child.

. . .

The violent episode when the two of you broke up and he hit walls and broke the door and things like that, things that he has apologized for certainly would not be in the child's memory or recollection to have affected the child. When I, you can read the code regarding name change and it says that the parents shall consent or and then you have to read the case law for really see what it takes for uh to uphold in light of [Father] not consenting to override his consent, find that it is so necessary and for the child's best interests to grant the name change even without his consent. I don't see that here. You haven't met the threshold. Um, and again just looks like you know from the time you wanted this uh filed under seal and the fact that he was served by publication rather than um, you know direct uh service just gives me great concern. Um, for those reasons I am going to deny the [application] for name change at this time.

(*Id*. at pp. 10-13).

Case No. 25 CO 0044

**{¶35}** The October 2, 2025 judgment entry on appeal reads in relevant part:

From the testimony the Court finds [Father] has regular contact with the minor child for companionship periods of approximately one time a week. There are no current child support orders for payment of support by [Father]. [Appellant] alleges that [Father] fails to support the child otherwise. [Appellant] initially alleged through her testimony that [Father] has a serious history of convictions of crimes of violence and/or drug abuse. Upon further inquiry the Court finds that the only record criminal convictions of [Father] are two misdemeanor disorderly conduct charges. There is evidence that upon the parties separation in January of 2024, [Father] became angry and damaged walls and a door at the parents [sic] residence before leaving. There is further evidence [Father] shows great remorse and is very apologetic to [Appellant] for his behavior on that occasion. On the date of the separation of [Appellant and Father], the child was of such young age that the child would not have an understanding, perception, or memory of those circumstances. [Appellant] also alleged the McNutt name is an infamous name in and about the city of Canton. The child resides at least 45 minutes from the City of Canton so even if the family name of [Father] is somewhat infamous it is not likely to affect the child residing in Lisbon, Ohio.

In consideration of the evidence, the Court is not satisfied that sufficient evidence had been presented to the Court to establish that it is

necessary to the best interest and safety of the minor child to grant the requested name change without the consent of [Father].

(10/2/25 J.E., p. 1).

{¶36} Turning to the merits of the appeal, the majority observes no less than ten times that Father did not appear before the probate court to place his objection to the application for name change in the record, and likewise has not appeared in this appeal. As a consequence, the majority concludes Father "tacitly approves of [the name change] as he made absolutely no effort to challenge it." Maj. Op. at ¶ 22. To the contrary, the application was filed because Father *refused* to consent to the name change. Mother concedes this fact in the documents attached to the application as well as her motion to waive publication of notice. Simply because Father relinquished his right to be heard on the matter, the probate court was not prohibited from considering the interest of the child in maintaining Father's name. In fact, the probate court has a duty to consider all relevant evidence in determining the child's best interest.

{¶37} The majority characterizes the probate court's consideration of the child's interest in retaining Father's name as the probate court acting in the best interest of Father, rather than the best interest of the child. However, the majority's characterization of the probate court's interpretation of the evidence presupposes Father's interest and the child's interest are opposed. The first factor to be considered when evaluating an application for a name change for a child is "the preservation and development of the child's relationship with *each* parent." *Id.* at ¶ 9. While Mother offered the evidence into the record to support the application for name change, the probate court acted within its discretion in interpreting the evidence to conclude that it did not support the application.

{¶38}  In determining whether a change of a minor's surname is in the best interest of the child, the probate court must consider the following factors:  (1) the effect of the change on the preservation and development of the child's relationship with each parent; (2) the identification of the child as part of a family unit; (3) the length of time that the child has used a surname; (4) the preference of the child if the child is of sufficient maturity to express a meaningful preference; (5) whether the child's surname is different from the surname of the residential parent; (6) the embarrassment, discomfort, or inconvenience that may result when a child bears a different surname that the residential parent; (7) parental failure to maintain contact with and support of the child; and (8) any other factor relevant to the child's best interest. *In re Willhite*, 85 Ohio St.3d 28 (1999), paragraph two of the syllabus.

{¶39}  Factor five is the only factor that unequivocally favors the name change as the child's surname is different than the residential parent.  With respect to factors one and seven, the probate court gives considerable weight to Father's weekly contact with the child despite Father's failure to provide financial support. Although Appellant was prevaricating in her direct testimony regarding Father's weekly visits, she ultimately conceded Father maintained consistent contact with the child. With respect to Father's failure to contribute monetarily for the child's needs, the probate court observed Mother had not pursued an order of support through the probate court.

{¶40}  With respect to factors two and five, Appellant testified the requested name change would help the child identify as a part of Appellant's family unit, consisting of Appellant's mother and sister. She further testified Father's surname caused inconvenience as she was required to bring the child's birth certificates to physicians'

appointments to prove she is his mother. The probate court appeared to give little weight to the foregoing factors given the child's age and the minor inconvenience of producing the child's birth certificate at the first appointment with a new physician. The probate court likely gave little weight to concerns regarding the child's embarrassment and discomfort with Father's surname for the same reason. Factors three and four are irrelevant to the probate court's determination.

{¶41} Finally, with respect to the catch-all best interest provision, the probate court opined at the hearing that Appellant's purpose in seeking the name change was to alienate the child from Father. Based on Appellant's testimony at the hearing, the probate court opined:

> [Father] has not consented to the adoption [sic] of this child. He is not in violation of a court order for failing to support (pause) ma'am I am going to just be kind of brutely [sic] honest with you, through your filings and so forth it appears that you are aggressively trying to put [Father] out of you and the child's life.

(10/1/25 Hrg. Tr., p. 11).

{¶42} Although Appellant objected to the foregoing characterization, the probate court predicated its opinion on Appellant's efforts to waive publication of the prospective name change due to safety concerns, as well as Father's criminal history, as the probate court found Appellant's allegation were either too distant in the past, or overstated, and had no impact on the child. For instance, Mother testified "recently there had been some charges and allegations of with you know drugs, possession, DUI all of that stuff, criminal

record." (*Id.* at p. 6). However, when the probate court specifically inquired about Father's criminal history, Mother conceded Father had two convictions for disorderly conduct.

**{¶43}** With regard to the property damages caused by Appellant roughly two years earlier, the probate court cited text messages in which Father apologized with great humility. The trial court opined the child was an infant at the time and likely had no recollection of the incident. Finally, the probate court flatly rejected Mother's contention that the reputation for criminality of Father and his family in Canton, Ohio would have a deleterious effect on the child, based on Father's misdemeanor criminal history and the 45-minute distance by automobile between Canton and the child's hometown.

**{¶44}** Regardless of whether we agree with the probate court's interpretation of Appellant's testimony and evidence, the foregoing excerpts from the hearing transcript reveal the probate court's decision turned in some measure on a credibility determination traditionally reserved to the trier of fact. "[D]eterminations of witness credibility . . . and evidence weight are primarily for the trier of fact who sits in the best position to judge this evidence by observing witness gestures, voice inflections, and demeanor." *Bloor v. Barnes*, 2026-Ohio-1529, ¶ 23 (7th Dist.), citing *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984); *State v. DeHass*, 10 Ohio St.2d 230 (1967), syllabus.

**{¶45}** In summary, Father did not consent to the name change. Of equal import, the probate court was neither required to act as a "rubber stamp" nor disregard the child's best interest in retaining Father's name based on Father's lack of participation in the legal process. Next, the probate court was in the best position to weigh Appellant's credibility. Therefore, even where I would have interpreted certain evidence in a different light, I do

not find the probate court acted unreasonably in overruling the application for name change.

**{¶46}** " 'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' " *Abrahamson v. Dept. of Commerce, Div. of Real Estate & Professional Licensing*, 2025-Ohio-4581, ¶ 30 (7th Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶47}** Accordingly, I would affirm the judgment entry of the probate court.

———————————————————

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division, of Columbiana County, Ohio, is reversed. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## **NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**